UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| NDN COLLECTIVE, et al, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. FOREST SERVICE, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) Case No. 5:26-cv-5035-CCT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| CHEYENNE RIVER SIOUX TRIBE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. FOREST SERVICE, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) Case No. 5:26-cv-05051-CCT <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**TEMPORARY RESTRAINING ORDER**

**I. INTRODUCTION**

Before the Court are Plaintiffs' Motions for Temporary Restraining Order and

Preliminary Injunction in these companion cases, which are captioned *NDN Collective, et al., v.*

*U.S. Forest Service, et al.*, Case No. 5:26-cv-05035-CCT, and *Cheyenne River Sioux Tribe, et*

*al., v. U.S. Forest Services, et al.*, Case No. 5:26-cv-05051-CCT. Plaintiffs in the former case are

three nonprofit organizations: NDN Collective, Black Hills Clean Water Alliance, and

Earthworks. Plaintiffs in the latter case are nine federally recognized Indian tribes located in

Nebraska, North Dakota, and South Dakota: Cheyenne River Sioux Tribe, Crow Creek Sioux

1

Tribe, Lower Brule Sioux Tribe, Oglala Sioux Tribe, Santee Sioux Tribe, Sisseton-Wahpeton Oyate, Spirit Lake Sioux Tribe, Standing Rock Sioux Tribe, and Yankton Sioux Tribe.  The defendants in both cases are the U.S. Forest Service, the U.S. Department of Agriculture, and James Gubbels, District Ranger of the Mystic Ranger District of the U.S. Forest Service.

Plaintiffs in Case No. 5:26-cv-05035-CCT filed their Motion for Temporary Restraining Order and Preliminary Injunction on April 27, 2026. Dkt. No. 12. Defendants filed their Opposition on May 1, 2026. Dkt. No. 15. Plaintiffs filed their Reply on May 3, 2026. Dkt. No. 16.

Plaintiffs in the Case No. 5:26-cv-05051-CCT filed their Motion for Temporary Restraining Order and Preliminary Injunction motion on April 30, 2026. Dkt. Nos. 3 and 4. Counsel for Plaintiffs gave notice of the motion to counsel for Defendants on or about April 30, 2026. *Id*.

The Court reviewed all submissions, including the declarations submitted by the parties, and heard oral argument from all parties on May 4, 2026. For the reasons stated below, Plaintiffs' Motions for Temporary Restraining Order are GRANTED.

## II. BACKGROUND

### A. The Pete Lien and Sons Rochford Mineral Exploratory Drilling Project

On June 11, 2024, Pete Lien and Sons, Inc. ("Operator") submitted a proposed Plan of Operations ("PO") to the Mystic Ranger District of the Black Hills National Forest ("BHNF"), proposing to conduct mineral exploratory drilling for graphite on National Forest System lands in the BHNF near Rochford, South Dakota.

The U.S. Forest Service (USFS") was required to assess the environmental effects of the Project pursuant the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq.*

2

NEPA is a procedural statute enacted to ensure that information on the environmental impacts of any Federal, or federally funded, action is available to public officials and citizens before decisions are made and before actions are taken. NEPA requires federal agencies to analyze the direct, indirect, and cumulative impacts of proposed undertakings on federal lands, evaluate reasonable alternatives (including "no action"), and allow public participation in the process. NEPA requires federal agencies to prepare Environmental Impact Statements ("EIS") for proposed undertakings that will have significant effects on the human environment. Agencies must prepare Environmental Assessments ("EA") for proposed undertakings whose effects on the human environment are uncertain. Agencies may issue Categorical Exclusions ("CE") for proposed actions that do not individually or cumulatively have a significant effect on the human environment.

On February 27, 2026, Defendant U.S. Forest Service ("USFS") issued a Decision Memo ("DM") approving the Rochford Mineral Exploratory Drilling Project ("Project"). Rather than preparing an EIS or EA, the USFS invoked Categorical Exclusion CE-8, which applies to "[s]hort-term (1 year or less) mineral, energy, or geophysical investigations and their incidental support activities." 36 C.F.R. § 220.6(e)(8), repromulgated at 7 C.F.R. § 1b.4(d)(32).

As approved, the Project authorizes drilling of up to 18 boreholes at a maximum depth of 1,000 feet, construction of approximately 5,050 feet of temporary overland access routes, and installation of two staging areas. The Project further requires post-drilling reclamation, including revegetation, noxious weed monitoring and treatment, and field inspections.

The DM states that noxious weed monitoring and treatment will continue for "two to three years post-disturbance." DM at 11. The approved PO further provides that PLS will conduct "annual field inspections of drill sites and the lay-down area" for "3 years" to monitor

"reclamation effectiveness and noxious weed infestations," and that if reclamation criteria are not met, PLS will "make modifications to the site, incorporating such changes and additional procedures as may be expected to provide reclamation to the stated standard." PO at 14. *Accord,* DM at 17. These modifications could include "additional seeding, weed treatment, or installation of erosion control structures may be required" by the agency. DM at 11. The reclamation bond will not be released until monitoring confirms successful reclamation "for three years." DM at 17.

### B. Pe'Sla and Its Significance to Plaintiffs

The Project is within the cultural landscape of Pe'Sla, a high mountain meadow, grassland, and surrounding forest in the heart of the Black Hills. Pe'Sla is sacred to the Lakota, Nakota, and Dakota tribes of the Great Sioux Nation, including the representatives and members of the three nonprofit organizations that are Plaintiffs in Case No. 5:26-cv-05035 and the nine tribes that are Plaintiffs in Case No. 5:26-cv-05051-CCT. These and other tribes have acquired much of the land within Pe'Sla.

In 2016, the United States Department of the Interior took approximately 2,022.66 acres of land within Pe'Sla into trust for the benefit of four tribes, including Plaintiffs Crow Creek Sioux Tribe and Standing Rock Sioux Tribe. In so doing, the Department recognized Pe'Sla as one of the tribes' "most precious sacred sites." Decision, Assistant Secretary – Indian Affairs, December 2, 2016, at 4. Plaintiffs inform the Court that several Sioux tribes, including Plaintiffs Cheyenne River Sioux Tribe, Crow Creek Sioux Tribe, Oglala Sioux Tribe, Sisseton-Wahpeton Oyate, and Yankton Sioux Tribe have participated in the purchase of approximately 612 additional acres of land within Pe'Sla.

In 2024, the USFS entered into a Memorandum of Understanding ("MOU") with Great Sioux Nation Tribes in which it acknowledged the importance to the tribes of the lands within a two-mile-wide radius of Pe'Sla. MOU at 6 and Appendix A. Many of the Project's drilling sites, access routes, and staging areas fall within this 2-mile radius.

Plaintiff tribes, nonprofits, and their members conduct traditional, cultural, and religious ceremonies and practices at Pe'Sla.

## III. LEGAL STANDARD

Before this Court may issue a temporary restraining order, it must consider: (1) the threat of irreparable harm to the movant; (2) the balance between that harm and the injury that granting the injunction will inflict on other parties; (3) the probability of success on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

The likelihood of success factor examines whether plaintiffs can "demonstrate that [they have] a 'fair chance' of prevailing on the merits." *Schmitt v. Rebertus*, 148 F.4th 958, 966 (8th Cir. 2025), quoting *Sleep Number Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022). "While no single factor is determinative, the probability of success factor is the most significant." *Schmitt* at 966, quoting *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). "To show a fair chance of prevailing, [Schmitt] must show that [his] claims provide fair ground for litigation, but [he] need not show that [he] has a greater than fifty per cent likelihood of success." *Schmitt*, at 966, quoting *Sleep Number*, at 1016–17. The "balance of equities" and "public interest" factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Judicial review of the USFS's NEPA compliance is governed by the Administrative Procedure Act, 5 U.S.C. § 706, under which the agency's decision must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

## IV. ANALYSIS

### A. Likelihood of Success on the Merits.

The Court finds that Plaintiffs have met their burden of showing that they are likely to prevail on the merits of their claim that the Project does not qualify for CE-8 because Project operations will not be completed within one year.

CE-8 authorizes the categorical exclusion of "[s]hort-term (1 year or less) mineral, energy, or geophysical investigations and their incidental support activities." 36 C.F.R. § 220.6(e)(8). The plain text of the CE limits its application to projects whose full scope of operations can be completed within one year. The threshold question is whether the operations approved in the DM — taken as a whole — will be completed within that limit.

The Forest Service's own regulations define "operations" in the mineral exploration context as "[a]ll functions, work and activities in connection with prospecting, exploration, development, mining or processing of mineral resources and all uses reasonably incident thereto." 36 C.F.R. § 228.3. The regulations further require that operators reclaim all disturbed surface areas, including through revegetation and wildlife habitat rehabilitation. 36 C.F.R. § 228.8(g). The Forest Service reviews exploration and reclamation as a single proposed project. *See Friends of the Inyo v. U.S. Forest Service*, 103 F.4th 543, 552 (9th Cir. 2024) ("[R]eclamation cannot be bifurcated from other mineral exploration efforts.").

The DM and PO approved in this case contain multiple admissions that operations, inclusive of reclamation, will extend beyond one year. The DM states that "[a]ll areas of ground

6

disturbance would be monitored for noxious weeds and treated for two to three years post-disturbance." DM at 11. The PO requires annual field inspections for three years and expressly authorizes the Operator to "make modifications to the site" — a ground-disturbing activity — during that period if reclamation criteria are not met. PO at 14. The reclamation bond will be retained until monitoring confirms successful reclamation "for three years." *Id*.

The Forest Service argues that these provisions reflect mere monitoring and that any additional reclamation work beyond one year would require a new Plan of Operations and additional NEPA review. This argument has been rejected by federal courts in similar cases with similar facts. In *Defenders of Wildlife v. U.S. Forest Service*, No. CV-14-02446-TUC-RM, 2015 WL 14070482 (D. Ariz. Sept. 15, 2015), the court held that where reclamation work is "already contemplated in and authorized by the Decision Memorandum, with no indication in the record that the already-approved reclamation design features would require a new Plan of Operations or further review and approval," the agency cannot rely on future review to satisfy the one-year CE limit. *Id*. at *4 n.5. The court found the agency's reliance on CE-8 under those circumstances "arbitrary and capricious." *Id*. at *4. The Ninth Circuit reached the same conclusion in *Friends of the Inyo*, holding that the Forest Service "necessarily reviews mineral exploration and reclamation as a single proposed project" and that reclamation cannot be separated from operations for purposes of the one-year CE analysis. 103 F.4th at 552.

While these decisions are not binding on this Court, they are persuasive, and the Forest Service has not articulated a meaningful factual distinction between those cases and the present one. The PO's authorization of multi-year monitoring, site modifications, and noxious weed treatment is substantially the same as the multi-year reclamation provisions at issue in *Defenders* and *Friends of the Inyo*.

7

The Defendants' reliance on *Patagonia Area Resource Alliance v. United States Forest Service*, No. CV-23-00280-TUC-JGZ, 2023 WL 5723395 (D. Ariz. Sept. 5, 2023), is misplaced. That court found CE-8 applicable because the plan of operations in that case stated that "all project activities will be complete within twelve months." *Id*. at *2. No comparable finding can be made here, where the DM expressly contemplates two to three years of post-disturbance treatment.

The Court therefore finds that Plaintiffs have demonstrated a fair chance of success on the merits of their claim that the Forest Service's reliance on CE-8 was arbitrary and capricious because project operations, taken as a whole, will not be completed within one year.

Because the Court finds that Plaintiffs have met their burden with respect to this claim, the Court need not analyze the likelihood that Plaintiffs will succeed on their other claims.

### B. Irreparable Harm

The Court finds that Plaintiffs have established that they will suffer irreparable harm in the absence of preliminary relief. Plaintiffs have identified four independent, but interrelated, categories of harm: (1) harm to sacred land and traditional, cultural, and religious practices at Pe'Sla; (2) harm to water quality and drinking water resources; (3) ecological harm to a rare landscape; and (4) permanent loss of procedural rights under NEPA and the National Historic Preservation Act ("NHPA"), U.S.C. § 300101, *et seq*. Plaintiffs' harms are described in their briefs and other submissions, including Dkt. No. 12-1 at 22-27 in Case No. 5:26-cv-05035-CCT, and Dkt. No. 4 at 26-28 in Case No. 5:26-cv-05051-CCT.

Defendants argue that the Plaintiffs' harms are speculative and that reclamation will remedy any environmental impacts. The Court is not persuaded. The harms described by Plaintiffs are not speculative or generalized — many have already occurred. The Operator has

conducted exploratory drilling and other operations at several locations. Plaintiffs have shown that they have been harmed by these operations, and that they will suffer irreparable harm if the Operator is permitted to conduct exploratory drilling and other operations at additional drill locations, many of which are closer in proximity to the tribally purchased lands at Pe'Sla. Reclamation cannot restore the cultural and ceremonial significance of a sacred site disturbed by industrial activity; it cannot restore a unique ecosystem to its pre-disturbance condition; and it does not undo harm that has already been done. The agency's own reclamation requirements — including a three-year monitoring period, contingent site modifications, and a reclamation bond held for three years — implicitly acknowledge the limits of reclamation as a remedy.

The Court finds that there is no adequate remedy at law for the irreparable harms identified by Plaintiffs.

### C. Balance of Equities and Public Interest

The balance of equities favors Plaintiffs. The irreparable harms to Plaintiffs — destruction of sacred cultural sites, disruption of religious ceremonies, risk to a unique ecosystem, and risk to a municipal water supply — are severe and, in significant part, already occurring.

Against these harms, Defendants assert the economic interests of the Operator and the public interest in critical mineral exploration. The Court does not discount these interests. However, as the Eighth Circuit has noted, "public interests that might be injured by a preliminary injunction, such as temporary loss of jobs or delays in increasing energy output in the region, do not outweigh the public interests that will be served" by compliance with NEPA. *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997-98 (8th Cir. 2011). Moreover, this is an exploration project, no recoverable graphite has been confirmed, and any actual mining operation

would require additional permitting. The economic harm from a temporary halt to exploration drilling, while real, is limited in duration and magnitude compared to the cultural, ecological, and religious harms on the other side of the scale.

The public interest supports issuance of a temporary restraining order. The public has a substantial interest in the enforcement of NEPA's procedural requirements, which exist to ensure that federal agencies make informed decisions about projects affecting public lands and resources. *See Richland/Wilkin Joint Powers Authority v. United States Army Corps of Engineers*, 826 F.3d 1030, 1043 (8th Cir. 2016). The public also has a substantial interest in the protection of federally recognized American Indian sacred sites, municipal water supplies, and rare native ecosystems.

The government argues that the public interest in critical mineral development favors allowing the Project to proceed. The Court acknowledges this interest. However, NEPA's requirements apply to critical mineral projects just as they apply to any other federal undertakings. The public interest in mineral development does not override the public interest in ensuring that development occurs only after lawful environmental review.

## V. BOND

Fed. R. Civ. Proc. 65(c) provides that when temporary relief issues, the plaintiff must post a bond "in such sum as the court deems proper". The Eighth Circuit recognizes the district court's discretion to waive the bond requirement (or require only a nominal bond) in cases vindicating the public interest, such as here. Nevertheless, given the Defendants' assertions of financial harm to the Operator, the Court finds that security in an amount of $10,000 in each case is necessary to protect the Operator and any other party who may be found to have been wrongfully enjoined or restrained by the temporary restraining order.

## V. TEMPORARY RESTRAINING ORDER

Having considered and weighed each of the *Dataphase* factors, the Court concludes that a temporary restraining order is necessary to preserve the status quo and prevent irreparable harm to Plaintiffs until an evidentiary hearing can be held on Plaintiffs' Motions for Preliminary Injunction.

The issuance of a temporary restraining order is contingent upon posting by Plaintiffs in each case of a bond in the combined amount of $10,000 per case.

In view of the foregoing, it is hereby:

ORDERED that Defendants, their agents, servants, employees, and all others acting in concert with them, or subject to their authority or control, including the Operator, Pete Lien and Sons, Inc., are restrained and enjoined from proceeding with any aspect of the Project until an evidentiary hearing can be held on Plaintiffs' Motions for Preliminary Injunction, provided that the Operator may remove its equipment from the Project area; and

ORDERED that the Court shall hold an evidentiary hearing on Plaintiffs' Motions for Preliminary Injunction on May 20-21, 2026; and

ORDERED that Plaintiffs in each case shall post a bond with the Court in the amount of $10,000 per case; and

ORDERED that Defendants shall notify the Court and the parties of the expected timeline for preparation of the administrative record in these companion cases.

This Temporary Restraining Order shall enter in *NDN Collective, et al., v. U.S. Forest Service, et al.*, Case No. 5:26-cv-05035-CCT, and *Cheyenne River Sioux Tribe, et al., v. U.S. Forest Services, et al.*, Case No. 5:26-cv-05051-CCT.

Dated May 5, 2026.

BY THE COURT:

 

 

_____

CAMELA C. THEELER
DISTRICT JUDGE